HUGH SPEARS ET AL *v.* ROBERT A. SALE ET AL.

**Wills—Antipathy Toward Children—Mental Delusion—Verdict—Judgment.**
> The antipathy which the deceased indulged toward his children, without cause, and out of which he could not be reasoned, indicates mental delusion, which resulted in the production of the document now sought to established as his will and if this conclusion was more doubtful than it is, it might be made preponderant by the verdict of a jury of neighbors. confirmed by a judgment of the circuit court.

APPEAL FROM WOODFORD CIRCUIT COURT.

November 25, 1867.

OPINION OF THE COURT BY JUDGE PETERS:

A writing purporting to be the last will and testament of Edmund Munday, deceased, was offered to the Woodford County Court for probate. And was rejected. The propounders then appealed to the circuit court, where upon the trial of the issue by a jury said document was found not to be the last will, and testament of said Munday, and a judgment having been rendered by the court in conformity to the verdict of the jury, and a new trial refused, the propounders have appealed to this court.

The contested paper was written and acknowledged in Versailles in April, 1866, to which place decedent had gone for the purpose of having it prepared, and publishing it; he was then about 66 years of age, had six children living, and a grand-daughter, the child of a deceased son, his wife was also living; he died in July following possessed, as is proved, of an estate valued at $8,000, the most valuable part of which was his homestead, à farm of some 220 acres worth perhaps thirty dollars per acre. It does not appear that he had advanced any of his children, or his grand-child.

He had three daughters two of whom were married, the other a single woman of some 25 years of age or more as the evidence conduces to show, the grand-child about 4 years of age, the sons were all over 21 years of age; but whether married or not does not appear.

The provisions of the testamentary document are short and simple, in it decedent gives to his wife the one-third of all his

estate for life and remainder to his daughter Mrs. Spear, and his two sons Robert and John. To his daughters Mrs. Sale and Mrs. S. E. Munday he gives $200 each, to his son Reuben $50. And to his grand-daughter Elizabeth N. Munday $700 and the residue of his estate to Mrs. Spear and Robert and John Munday.

The two subscribing witnesses to the instrument, one of whom was the draftsman, and the other a brother of decedent, and both intelligent and respectable gentlemen, depose that at the time of its acknowledgement decedent was of sound mind and competent to make a rational and vaild disposition of his property by will, and perhaps all the witnesses who testified in the case, except his wife, say he was competent to transact ordinary business, and to manage his own affairs with as much skill and judgment as men of common sense; but his wife proved that the last year of his life he managed his business badly, and spent about $1,600 dollars foolishly.

To this evidence there are opposing facts which will be now noticed. For a number of years before his death decedent had been afflicted with disease of the kidneys, his disease had become chronic and continued to increase in violence until it terminated his life. From physical suffering and without hope of recovery he was melancholy and desponding and in temper as the disease progressed he became more impatient and irascible, especially towards his own children, and some of the witnesses prove that his malady and the imaginary disobedience and unfilial conduct of his children were his chief, if not constant themes of conversation. With them he had frequent difficulties, sometimes with one and then another in which his wife testified she thought his conduct was unreasonable, and sometimes irrational, often provoking them, never kind to them, and his aversion towards them increased as his health grew worse.

At one time he charged Sale, the husband of his daughter Lucy with having marked his hogs, invited those present to go with him to the lot where the hogs were to show by an examination of them that they were all found to be in his own mark, he left without saying any thing more. At another time he charged Sale with "*tutoring*" his sons Reuben and John (in the language of the witness) to dislike their father, for which there was as little foundation as there was· for accusing him of marking his hogs. John was examined as a witness, and proves no such thing ever occurred, and although a favored beneficiary in the contested

document, he says he is opposed to it, because he did not think his father could do justice amongst his children on account of his prejudices, he talked hard of them, was at sometimes prejudiced against all of them except his sister Susan (Mrs. Spear) and never at the same time friendly with all of them.

To his daughter Sarah he was very hostile, and although she approached him more than once to effect a reconciliation, the last time, only a few days before his death and while she was doing all she could for his comfort, but he turned from her relentless and died unreconciled to her, and her offense as explained by his wife was rather imaginary than real, and certainly did not merit the unforgiving antipathy manifested towards her by her father to the last. Other facts disclosed by the evidence might be referred to showing his displeasure towards others of his children at different times, but less violent and of shorter duration and generally accompanied with threats of disinheritance, though a recital of them is deemed unnecessary, it may not be improper however to mention the fact that he had previously published a paper as his will different in its provisions, and which he caused to be destroyed and had the contested paper prepared in its place, on account of a difficulty he had with his son Reuben shortly before its date.

The antipathy which the deceased indulged towards his children without cause, or if any existed, slight and trivial and out of which he could not be reasoned, indicates mental delusion, which the evidence conduces to show resulted in the production of the testamentary document now sought to be established as his will. But which cannot according to the weight of authority be done.

Redfield on the Law of Wills, pp. 72-3; 84-5-6-7. Johnson vs. Moore's heirs, 1 Litt., 370.

And as was said by this court in Harrel, &c., vs. Harrell, &c., 1 Duv., 203, this conclusion were it more doubtful than it is, might be made preponderant by the verdict of a jury of neighbors confirmed by the judgment of the circuit court. And in this case by the judgment also of the county court.

Wherefore it is adjudged by this court that the writing in question is not the *Will* of Edmund Munday and the cause is remanded to the court below with instructions to enter this mandate and certify the same to the county court of Woodford with direction that the judgment of that court be affirmed.            e

*T. McCleod, Beck,* for appellants.

*Porter & Greathouse, Huston,* for appellees.